UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

MELVIN SEALEY,

                Plaintiff,

       -against-
                                **MEMORANDUM AND ORDER**
                                    21-CV-3189 (FB) (TAM)

C.R. ENGLAND, INC. et al.,

                Defendants.

-------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

       Melvin Sealey ("Plaintiff") brings this action against C.R. England, Inc. and Oscar James Young, Jr. ("Defendants") claiming that Defendants' tractor-trailer hit Plaintiff's car, causing him severe personal injuries and other damages. (Complaint ("Compl."), ECF No. 1-1, ¶¶ 17, 19.) Plaintiff originally filed his Complaint in New York Supreme Court, Queens County, and Defendants removed the case to this Court on June 4, 2021. (Notice of Removal, ECF No. 1.)

       During discovery, Defendants filed a motion for a protective order for surveillance footage, seeking to withhold surveillance footage of Plaintiff taken after the alleged incident. (*See* Mot. for Protective Order, ECF No. 8; Resp. in Opp'n, ECF No. 9; Reply in Supp., ECF No. 10.) For the reasons set forth below, Defendants' motion for a protective order is granted.

                             **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

       As set forth in the Complaint, Plaintiff claims that on March 31, 2020, Defendant Oscar James Young, Jr. ("Defendant Young") was operating Defendant C.R. England, Inc.'s ("Corporate Defendant") tractor-trailer with the "permission and consent, express

and/or implied," of Corporate Defendant. (Compl., ECF 1-1, ¶¶ 4, 6.) Defendant Young is an employee of Corporate Defendant. (*Id.* ¶ 7.) Plaintiff alleges that Defendants' tractor-trailer struck and sideswiped Plaintiff's car (*id.* ¶¶ 17, 18), resulting in his suffering severe and serious, permanent personal injuries and special damages. (*Id.* ¶ 19.) Plaintiff also claims that Defendants were "negligent, careless and reckless in the ownership, management, maintenance, supervision and control of Defendants' vehicle" (*id.* ¶ 21), and that Plaintiff sustained serious injuries as defined by Sections 5102(d) and 5104 of New York Insurance Law. (*Id.* ¶ 22.)

On June 29, 2021, at the parties' initial conference, Defendants requested a briefing schedule for a motion for a protective order, leading to the instant motion. (*See* Aug. 3, 2021 ECF Minute Entry and Order; Mot. for Protective Order, ECF No. 8.) In their motion, Defendants request that the Court issue a protective order:

> (1) Allowing Defendants to delay production of surveillance video footage obtained of Plaintiff, until after Plaintiff's deposition, due to concerns that Plaintiff will tailor his testimony based on what is revealed in the video footage; (2) Shielding the investigators' reports created after surveilling Plaintiff on the basis of the work-product doctrine; and (3) For such other and further relief that this Honorable Court deems just and proper.

(Mot. for Protective Order, ECF No. 8, at 1.)

Plaintiff's response opposes Defendants' motion on the grounds that Defendants did not make a showing of good cause and that the work product doctrine does not apply because Plaintiff has a substantial need for the investigators' reports. (Resp. in Opp'n, ECF No. 9.) Defendants' reply reiterates their concerns about Plaintiff's tailoring his testimony at his deposition if the surveillance footage were to be disclosed beforehand, and points out that delayed production of the footage would not prejudice Plaintiff because he is aware of his own activities. (Reply in Supp., ECF No. 10, at 2.)

2

For the reasons stated below, the Court grants Defendants' Motion for a Protective Order. (ECF No. 8.)

## DISCUSSION

I. <u>Legal Standards</u>

   A. <u>Motion for Protective Order</u>

Federal Rule of Civil Procedure 26(b)(1) provides, in pertinent part, that: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Rule 26(b)(1) also provides that when determining whether something is discoverable, courts can consider "whether the burden or expense of the proposed discovery outweighs its likely benefit." Discovery rules should be broadly interpreted to achieve their purposes. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 236 (2d Cir. 1985). The purposes of discovery include "avoiding surprise, fully disclosing the nature and scope of the controversy, narrowing, simplifying, and framing the issues involved, and enabling parties to obtain the factual information needed to prepare for trial." *Gary Plastic Packaging Corp.*, 756 F.2d at 236.

A party seeking to delay the disclosure of surveillance evidence and videos until after a deposition may seek a protective order from the court. Fed. R. Civ. P. 26(c)(1). Rule 26(c)(1) states that "[t]he court may, for good cause, issue an order to protect a party or person form annoyance, embarrassment, oppression, or undue burden or expense, including . . . (A) forbidding the disclosure or discovery[.]" *Id*. The burden is on the movant to show good cause for the protection requested. *See In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987); *Gordon v. Target Corp.*, 318 F.R.D. 242, 245 (E.D.N.Y. 2016); *Giladi v. Albert Einstein Coll. of Med.*, No. 97-CV-9805 (DC), 1998 WL

3

183874, at *1 (S.D.N.Y. Apr. 15, 1998). Ultimately, "'[t]he grant and nature of protection is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion.'" *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) (quoting *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir. 1973)).

      B.  <u>Work Product Doctrine</u>

The work product doctrine protects documents that are prepared in anticipation of litigation from disclosure. Such documents can only be discovered when there is a showing of "necessity or justification." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). To earn work product protection, "[t]he material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *Weinhold v. Witte Heavy Lift, Inc.*, No. 90-CV-2096 (PKL), 1994 WL 132392, at *2 (S.D.N.Y. April 11, 1994) (internal quotations marks and citation omitted). The work product doctrine is not, however, absolute, and may not preclude disclosure if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also Upjohn Co v. U.S.*, 449 U.S. 383, 398 n.7 (1981); *U.S. Sec. and Exch. Comm'n v. Collector's Coffee, Inc.*, 337 F.R.D. 70, 78 (S.D.N.Y. 2020).

II.  <u>Defendants Have Made a Showing of Good Cause</u>

Notwithstanding the broad purposes of federal discovery, courts in the Second Circuit have long held that surveillance tapes made for impeachment after a party's alleged injury may be subject to a protective order. As Judge Leisure observed many years ago:

> In order to protect the value of surveillance tapes as a tool for impeachment of plaintiff's possible exaggeration of his disabilities, courts have found it appropriate to require disclosure of such

4

> impeachment materials only after plaintiff's deposition has been taken. In this way, the recording of plaintiff's sworn testimony will preclude any temptation on his part to alter his testimony based on what is seen on the surveillance tapes, yet the policy of broad discovery is nonetheless maintained.

*Weinhold*, 1994 WL 132392, at *1.

"Moreover, where the video evidence was to be used exclusively for impeachment purposes, courts have been more likely to allow a delay of production than if said video was primarily substantive evidence." *Hui Wang v. Omni Hotels Mgmt. Corp.*, No. 3:18-CV-2000 (CSH), 2019 WL 3852590, at *10 (D. Conn. Aug. 16, 2019). For example, in *Harrington v. Atlantic Sounding Co., Inc.*, the court analyzed whether surveillance footage taken by a private investigator had to be produced before depositions and found that "[i]f the defendant intends to use the tapes for impeachment purposes only, courts usually do not require production to be made until after the plaintiff has been deposed." No. 06-CV-2900, 2011 WL 6945185, at *1 (E.D.N.Y. Dec. 30, 2011). Similarly, in *Brannan v. Great Lakes Dredge & Dock Co.*, the court found that surveillance footage made by the defendant in the years after the accident for impeachment purposes to "determine the extent of plaintiff's recovery from his injuries, and to confirm whether or not he was, in fact, exaggerating his complaints of disability" did not have to be produced until after the plaintiff's deposition. No. 96-CV-4142 (DC), 1998 WL 229521, at *1, 2 (S.D.N.Y. May 7, 1998).

In this case, Defendants argue that they have established "good cause" for the protective order because they have shown that a "delay in the production of the surveillance of Plaintiff is appropriate to prevent Plaintiff from tailoring his testimony to be in conformity with the surveillance video." (Mot. for Protective Order, ECF No. 8, at 3.) In response, Plaintiff argues that to establish good cause, Defendants must present "particular and specific facts . . . rather than conclusory assertions." (Resp. in Opp'n,

ECF No. 9, at 1 (citing *Rofail v. United States*, 227 F.R.D. 53, 54 (E.D.N.Y. 2005)).) Plaintiff contends that "Defendants fail to point to any specific facts in their Motion and merely state in conclusory fashion that 'Plaintiff will tailor his testimony based on what is revealed.'" (*Id.* at 1.) Defendants counter with the argument that Plaintiff's Rule 26 disclosures contained medical records from Plaintiff's treatment following the alleged accident, which show that he has sustained soft tissue injuries to his neck and back, (*id.* at 1-2; Reply in Supp., ECF No. 10, at 2 n.1), and that they plan to use the surveillance footage to directly contradict any allegation that Plaintiff "has a permanent, consequential, or significant limitation[.]" (Reply in Supp., ECF No. 10, at 2.)

Relying on *Rofail*, Plaintiff contends that "'no case describes the possibility that a plaintiff might tailor testimony to a prior statement as good cause pursuant to Rule 26(c)[.]'" (Resp. in Opp'n, ECF No. 9, at 2 (quoting *Rofail*, 227 F.R.D. at 59).) However, many courts have found the risk that a plaintiff might tailor testimony — purposefully or inadvertently — to be good cause under Rule 26(c) to withhold video evidence, and even prior recordings of witness statements, until after depositions. *See Ampong v. Costco Wholesale Corp.*, 21-CV-2049 (CM) (CDA), 2021 WL 3159757, at *3 (S.D.N.Y. July 27, 2021) ("[I]t is appropriate to delay production of the video footage until after Plaintiff's deposition is taken, so that she cannot — wittingly or unwittingly — tailor her testimony to conform to the video footage."); *see also McQueen v. Huddleston*, No. 13-CV-302, 2015 WL 3746733, at *5 (W.D.N.Y. 2015) ("[T]he court finds plaintiff's request for a protective order to be consistent with the policy followed in this court, and other federal district courts within the Second Circuit, to discourage parties or witnesses from tailoring their testimony to conform with their prior recorded statements or actions."); *Daniels v. National Railroad Passenger Corp.*, 110 F.R.D. 160 (E.D.N.Y. 1986) ("[I]n order to protect the value of surveillance films to be used for impeachment of the plaintiff if he

6

exaggerates his disabilities . . . it may be appropriate to require disclosure of such impeachment materials only after the depositions of the plaintiff or other witnesses to be impeached, so that their testimony may be frozen.").

The cases Plaintiff relies upon in his opposition letter are largely inapposite. For example, in *Rofail*, the key case Plaintiff cites, the court found that the movant did not articulate specific facts sufficient to overcome the express requirement of Rule 26(b)(3) that mandates disclosure of a party's prior statement, which is subject to different analysis than the post-accident surveillance video footage at issue in this case. (*See* Resp. in Opp'n, ECF No. 9, at 1, 2 (citing *Rofail*, 227 F.R.D. at 54; *Costa v. AFGO Mech. Servs., Inc.*, 237 F.R.D. 21, 23 (E.D.N.Y. 2006)). In addition, the cases Plaintiff cites that required production of video footage before deposition are also distinguishable — they concern video recordings of the accidents at issue in the cases, which could constitute substantive evidence, unlike surveillance videos that are taken after an accident for impeachment purposes. (*See* Resp. in Opp'n, ECF No. 9, at 1–2 (citing *Gordon v. Target Corporation*, 318 F.R.D. 242 (E.D.N.Y. 2016); *Inferrera v. Wal-Mart Stores, Inc.*, 11-CV-5675 (RMB) (JS), 2011 WL 6372340 (D.N.J. Dec. 20, 2011)).) *See generally Avila v. Target Corporation*, 21-CV-907 (PKC) (JMW), 2021 WL 4311142, at *1, 3 & n.4 (E.D.N.Y. Sept. 22, 2021) (distinguishing between post-accident surveillance footage and footage of the accident itself, and denying delayed production of a video recording of the accident at issue).[1]

---

[1] Plaintiff raises the concern that if Defendants are allowed to delay the production of the surveillance footage, the resulting sequence of discovery would become "illogical and essentially allow[] Defendants and their counsel to 'hide the ball' and play 'gotcha games.'" (Resp. in Opp'n, ECF No. 9, at 2.) However, as the court in *Ampong v. Costco WholeSale Corp.* found, "there will be no real prejudice to the Plaintiff in receiving the footage after her deposition." 2021 WL 3159757, at *3. As the *Ampong* court reasoned, the footage was "a

The Defendants in this case are seeking to withhold only post-accident surveillance footage, and persuasively argue that the video evidence could directly contradict Plaintiff's claims of injury, and serve as valuable evidence for impeachment. The prevailing law in the Second Circuit finds that need to be sufficient to delay the production of surveillance videos taken after a party's alleged injuries. Like the court in *Harrington*, this Court "will follow the overwhelming majority of cases that have dealt with the issue[.]" 2011 WL 6945185, at *2. Accordingly, the Court finds that Defendants have established "good cause" under Rule 26(c) because delayed production of the surveillance videos will ensure that Plaintiff does not, inadvertently or purposefully, tailor his testimony at his deposition.

III. <u>Work Product Doctrine Protects the Investigative Reports from Disclosure</u>

Work product doctrine protects the investigative reports in this case because they were created in anticipation of litigation. Federal Rule of Civil Procedure 26(b)(3) "makes clear that the work product doctrine protects work done in anticipation of litigation or trial by an attorney, as well as a party or other agents of the party or its representative. *Weinhold*, 1994 WL 132392, at *2 (citing *United States v. Nobles,* 422 U.S. 225, 238–39 (1976) (finding that attorneys often must rely on investigators and work product doctrine applies to materials prepared by such agents); *Sterling Drug Inc. v. Harris,* 488 F. Supp. 1019 (S.D.N.Y. 1980) (finding that the work product privilege extends to documents prepared by agent of attorney responsible for coordinating and gathering evidence in anticipation of hearing)). In this case, Defendants represent that "the report was prepared by Defendants' investigators after this action was commenced

---

recording of an incident where Plaintiff herself was present. Thus, she does not need the video to present the substantive evidence in her case." *Id.*

and specifically for this litigation." (Mot. for Protective Order, ECF No. 8, at 3.) A document is prepared in "anticipation of litigation" when "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *Klosin v. E.I. du Pont de Nemours and Company*, 19-CV-00109 (EAW), 2021 WL 4271920, at *3 (W.D.N.Y. Sept. 20, 2021) (internal quotation marks and citation omitted). The investigative reports here were prepared after the accident at issue in this case and were clearly created due to the prospect of litigation.

Finally, the Court is not persuaded by Plaintiff's argument that he has a "substantial need" within the meaning of Fed. R. Civ. P. 26(b)(3)(A)(ii) to view the surveillance footage and review the investigative reports to provide context or determine whether they are deceptive. (Resp. in Opp'n, ECF No. 9, at 2–3.) Courts have found that when the video or report in question details actions by the plaintiff, the plaintiff will not be prejudiced by delayed disclosure, and may not even need the evidence to present the substance of the plaintiff's case. *See, e.g.*, *Harrington*, 2011 6945185, at *1 (concluding with "no difficulty" that surveillance tapes and reports prepared by a defense investigator fall within the scope of the work product doctrine and that "substantial need" did not warrant their disclosure prior to deposition); *see also Ampong*, 2021 WL 3159757, at *3 ("The footage is a recording of an incident where Plaintiff herself was present. Thus, she does not need the video to present the substantive evidence in her case."). In the instant case, Plaintiff should be aware of his own injuries and activities, including any of his actions captured on the post-accident surveillance video footage because he was present. Therefore, Plaintiff does not have a "substantial need" to view the surveillance evidence prior to his deposition, and the work product doctrine protects the reports from disclosure.

## CONCLUSION

For the foregoing reasons, the Court finds that due to legitimate concerns regarding Plaintiff's claimed injuries and the risk that he could — purposefully or inadvertently — tailor his testimony in the absence of the requested protective order, the post-accident surveillance footage taken on behalf of Defendants need not be disclosed until after Plaintiff's deposition. In addition, the investigative reports prepared in connection with the video surveillance are protected by the work product doctrine. Defendants' Motion for a Protective Order (ECF No. 8) is granted.

**SO ORDERED.**

Dated: Brooklyn, New York
 October 8, 2021

_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE